**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHARLES B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 16-3230 (RK) <br><br> **OPINION** |

**KIRSCH, District Judge**

     **THIS MATTER** comes before the Court on Plaintiff Charles B.'s ("Charles")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Charles's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

     In this appeal, the Court must answer the following question: Does substantial evidence support Administrative Law Judge Karen Shelton's ("Judge Shelton") determination of Charles's residual functional capacity?

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A.    PROCEDURAL POSTURE

#### 1.    Initial ALJ Decision

Charles applied for disability insurance benefits on September 8, 2010, alleging an onset date of February 28, 2010. (Administrative Record ("AR") at 654.)[2] The Social Security Administration (the "Administration") denied the request initially. Thereafter, Charles requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 24, 2011. (ECF Nos. 18 at 5; 21 at 2.) On October 31, 2011, an ALJ issued a decision finding Plaintiff not disabled, as defined in the Social Security Act during the relevant period. (AR at 111–26.) On May 23, 2013, the Appeals Council—the agency's final decisionmaker—vacated the October 31, 2011 decision and remanded it to an ALJ for a new hearing because the ALJ failed to consider parts of the medical opinions in the Record. (*Id.* at 127–30.)

#### 2.    Second ALJ Decision

A new hearing was held before a different ALJ on June 24, 2014 (ECF Nos. 18 at 6; 21 at 2), after which the ALJ found Plaintiff not disabled on September 3, 2014 (AR at 189–209). On April 1, 2016, the Appeals Council denied Charles's request to review the ALJ's September 3, 2014 decision. (*Id.* at 215–22.) Charles then filed this action in the District Court for the District of New Jersey. (ECF No. 1.) On November 4, 2016, the Commissioner filed a Motion to Remand the action pursuant to the sixth sentence of 42 U.S.C. § 405(g), because the decision, in part, was based on a medical opinion about a different person. (ECF No. 4.) Accordingly, the Honorable Judge Brian R. Martinotti remanded the matter to the Commissioner on December 21, 2016. (ECF No. 5.)

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 10. This Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

### 3.    Second Benefits Application & Third ALJ Decision

During this time, Charles filed a second disability insurance benefits application, alleging disability as of September 4, 2014. (AR at 171.) This second claim was denied in the first instance and upon reconsideration. (*Id.* at 176–77, 185.) On May 3, 2017, the Appeals Council remanded both the 2010 and 2016 disability claims to an ALJ, noting the District Court's remand order. (*Id.* at 133.) Further, the Appeals Council directed the ALJ to consolidate the 2010 and 2016 disability claims, create a single record, and issue a decision on the consolidated claims. (*Id.*) On September 17, 2018, Charles attended his third hearing before an ALJ. (*Id.* at 448–57.) After which, a third ALJ issued a written decision finding Charles not disabled on December 4, 2018. (*Id.* at 140–55.) On January 27, 2020, the Appeals Council remanded the case to an ALJ for several reasons, including for: (i) failing to consolidate Charles's 2010 and 2016 claims; (ii) further examination of Charles's sleep apnea, insomnia and obesity; (iii) failure to adequately consider Charles's subjective claims of pain; and (iv) failure to reconcile Charles's exertional limitation of occasional reaching with the jobs identified for Charles by the vocational expert ("VE"), which require constant reaching. (*Id.* at 163–67.)

### 4.    Fourth and Fifth ALJ Decisions

As a result of the January 2020 remand, Charles testified at his fourth hearing before an ALJ on December 16, 2020. (*Id.* at 93–109.) The ALJ issued a written decision finding him not disabled on January 15, 2021. (*Id.* at 240–56.) The Appeals Council again remanded the case to an ALJ for failing to adequately evaluate Charles's sleep apnea and reported symptoms of pain.

(*Id.* at 268–9.)[3] On remand, the case was assigned to another ALJ, Judge Shelton, who held

hearings on January 30, 2023 and April 25, 2023. (*Id.* at 43–92, 270.) Plaintiff, represented by

counsel, testified at these hearings, as did an impartial VE. (*Id.* at 43–92.) On June 5, 2023, Judge

Shelton issued a written opinion finding that Charles was not disabled. (*Id.* at 9–32.) The Appeals

Council denied Charles's request to review Judge Shelton's decision, making the decision final.

(*Id.* at 1–5.) This case was reopened in the instant Court on January 16, 2024. (ECF No. 7.) On

January 17, 2024, the instant case was transferred to the undersigned. (ECF No. 8.) The

Administrative Record was filed on February 5, 2024 (ECF No. 10), Charles filed his moving brief

challenging Judge Shelton's decision on May 1, 2024 (ECF No. 18), the Commissioner filed an

opposition brief on May 31, 2024 (ECF No. 21), and Charles filed his reply on June 28, 2024 (ECF

No. 26).

### B.    JUDGE SHELTON'S DECISION[4]

In her June 5, 2023 opinion, Judge Shelton found that Charles was not disabled under the

prevailing Administration regulations. (*See generally* AR at 10–32.) To reach this decision, Judge

Shelton applied the five-step process for determining whether an individual is disabled as set forth

---

[3] As stated above, prior to Judge Shelton's issuing her written ALJ opinion, the instant matter was remanded by the Appeals Council five separate times, resulting in four separate ALJ opinions and hearings written by three different ALJs, all of which found Charles not disabled. (AR at 43–92, 111–26, 128, 133, 140–55, 163, 189–209, 240–56, 268–9, 448–57; ECF Nos. 4, 18 at 5; 21 at 2.) However, the RFC determinations made by the prior ALJs in the instant matter have no bearing on Judge Shelton's determination of disability. *See Morales v. Apfel,* 225 F.3d 310, at 316 (3d Cir. 2000) (holding that a reviewing court is "bound to the Commissioner's findings of fact if they are supported by substantial evidence in the record"); *see also Correa v. Comm'r of Soc. Sec.,* No. 20-00367, 2022 WL 17622967, at *6 (D.N.J. Dec. 13, 2022) ("[O]ur review does not hinge on whether the ALJ arrived at an RFC determination different than the initial decision, rather, as discussed below, this Court must evaluate whether the ALJ based her RFC determination on substantial evidence.").

[4] The Court notes that Judge Shelton's opinion is twenty-four single-spaced pages long, and the Administrative Record is over 2200 pages long. Charles's appeal mainly challenges Judge Shelton's RFC determination as a precursor to Step Four, particularly her evaluation of Dr. Wilen and Dr. Kwock's medical opinions. (ECF Nos. 18 at 27–35, 37–38; 26 at 1–5, 6–9.) Therefore, the Court limits the statement of facts to focus on these medical opinions and any other necessary facts to put these opinions into context.

in 20 C.F.R. § 404.1520(a). (*Id.* at 10–12.) At Step One, Judge Shelton found that Charles had not engaged in substantial gainful activity since the alleged onset date, February 28, 2010. (*Id.* at 12 (citing 20 C.F.R. § 404.1571 *et seq.*).) At Step Two, Judge Shelton found that Charles suffered from several severe impairments, including: degenerative disc disease-cervical spine and lumbar spine with radiculopathy, status post-right triceps tendon rupture repair, right rotator cuff tear, left shoulder partial tear, degenerative joint disease, and obesity. (*Id.* at 12–16 (citing 20 C.F.R. § 404.1520(c)).) At Step Three, Judge Shelton determined that Charles did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 16–17 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As a precursor to Step Four, Judge Shelton concluded that Charles had the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except: Occasionally climb ramps and stairs. No climbing ladders, ropes or scaffold. Frequently balance. Occasionally stoop, kneel, crouch and crawl. Only occasionally overhead reach. Frequent reaching in other directions. Frequent handling and fingering. No unprotected heights or hazardous machinery. Simple routine tasks in a routine environment with few changes, simple work decisions, and can work 2 hours before needing a standard 15-minute break.

(*Id.* at 17–30.) At Step Four, Judge Shelton found that Charles "is unable to perform any past relevant work." (*Id.* at 30 (citing 20 C.F.R. § 404.1565).) Finally, at Step Five, Judge Shelton heard testimony from a vocational expert and concluded that "there are jobs that exist in significant numbers in the national economy" that Charles could perform. (*Id.* at 30–31 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) The impartial expert testified that representative jobs Charles could perform, consistent with Judge Shelton's RFC, included an order clerk, charge account clerk, and document preparer. (*Id.* at 31.)

This appeal concerns Judge Shelton's RFC determination and whether she properly

considered the opinion evidence from Charles's treating and non-treating physicians such that substantial evidence supports her RFC determination. (ECF Nos. 18 at 27–39; 26 at 1–9.)

As part of the ALJ's RFC determination, Judge Shelton first reviewed Charles's self-reported symptoms and claimed functional limitations. (AR at 17–18.) The ALJ considered Charles's treatment history—which related to his degenerative disc disease of the cervical spine and lumbar spine with radiculopathy, status post-right triceps tendon rupture repair, right rotator cuff tear, left shoulder partial tear, degenerative joint disease, and obesity—and determined that Charles's impairments could be expected to produce the symptoms he alleged, but the extent of Charles's "alleged limitations is not entirely consistent with the record." (*Id.* at 18–25.) Judge Shelton proceeded to perform a thirteen-page analysis of Charles's medical record from March 2009 through December 2017. As described below, Judge Shelton explicated how her RFC determination found support in the medical records she reviewed. (*Id.* at 18–29.)

Judge Shelton considered Charles's surgical and treatment history. (*Id.* at 19.) Charles underwent right triceps tendon repair surgery in March 2009; however, the surgery occurred prior to the alleged onset date and without complication. (*Id.* at 936–97.) During the relevant period, the record reveals one emergency room visit for low back pain in September 2011, from which he was discharged the same day. (*Id.* at 1593–95.) Charles's treatment history involved a multi-pronged approach of physical therapy, injections, chiropractic manipulation, pain management medication, and exercise strengthening programs.[5] However, Judge Shelton characterized this treatment

---

[5] (*Id.* at 1416–17, 1420–21, 1424–25, 1429, 1433, 1436, 1464–65, 1468–69, 1472–73, 1476–77, 1480–81, 1484–85, 1488–89, 1492–93, 1496–97, 1500–01, 1504, 1507–08, 1510–11, 1513–14, 1517–18, 1520–22, 1524–25, 1527–28, 1531–32, 1535, 1539, 1543, 1547, 1552, 1568–91, 1648, 1650–51, 1654, 1656–57, 1660, 1662–63, 1666, 1668–69, 1673, 1675–76, 1679, 1681–82, 1685–88, 1691, 1693–94, 1697, 1699–1700, 1703–06, 1709–12, 1715–17, 1720–22, 1730–32, 1735–37, 1740–42, 1745–47, 1750–52, 1755–57, 1760–62, 1765–67, 1770–72, 1775–77, 1780–82, 1785–87, 1790–92, 1795–97, 1800–01, 1805–07, 1810–

history as conservative, noting that Charles did not undergo surgery during the relevant time period. (*Id.* at 19.)

Medical records evidenced diminished dermatomal sensation to pinprick at C5-C7 and L3-L5 (*id.* at 20 (citing 1355, 1359, 1560, 1564, 1605)); decreased range of motion in the spine, right elbow, right shoulder, left elbow, decreased extremity strength, spinal spasm and weaknesses[6]; and positive Spurling's tests.[7] Besides the cited abnormal findings mentioned above, Judge Shelton notes that Charles's medical records "document exam findings of normal strength, intact, sensation, and/or no noted motor, strength, sensory, arm/hand use, or gait deficit or abnormality" as further evidenced by the record failing to "reveal any noted pain behaviors upon exam" like "shifting in a chair while seated, having to stand/walk after sitting for a short period, having to sit/lie down after standing/walking for a short period." (*Id.* at 21.) Collectively, Judge Shelton found Charles's medical records to reveal that Charles "was alert, fully oriented," and without "any noted assistive device use, atrophy, edema, swelling, joint instability/laxity, fasciculations, pronator drift, dysmetria, dysdiadochokinesia, titubation, nystagmus, contracture, cogwheeling, involuntary moments/tremors, or deformity." (*Id.*)

Other exam findings in the Record document normal cervical range of motion, normal

---

11, 1815–17, 1820–22, 1825–26, 1829–30, 1833–34, 1837–38, 1841–42, 1862, 1864–66, 1869–1881.)

[6] (*id.* (citing 1103, 1106–09, 1100, 112–13, 116, 118–19, 1121, 22, 1124–26; 1409, 1411–12, 1415–16, 1419–20, 1423–24, 1427–28, 1431–32, 1435–36, 1438–44, 1460, 1463–64, 1467–68, 1471–72, 1475–76, 1479–80, 1483–84, 1487–88, 1491–92, 1495–96, 1499–1500, 1503–04, 1507, 1510, 1513, 1517, 1520, 1524, 1527, 1530–31, 1534–35, 1538–39, 1542, 1546–47, 1550–51, 1647–48, 1653–54, 1659–60, 1665–66, 1672–73, 1678–79, 1684–85, 1690–91, 1696–97, 1702–03, 1708–09, 1714–15, 1719–20, 1724–25, 1729–30, 1734–35, 1739–40, 1744–45, 1749–50, 1754–55, 1759–60, 1764–65, 1769–70, 1774–75, 1779–80, 1784–85, 1789–90, 1794–95, 1799–80, 1804–05, 1809–10, 1814–15, 1819–20, 1824–25, 1828–29, 1832–33, 1836–37, 1840–41).)

[7] (*id.* (citing 1099, 1648, 1654, 1660, 1666, 1673, 1679, 1685, 1691, 1697, 1703, 1709) or straight leg raises (*id.* at 1409, 1416, 1420, 1460, 1468, 1472, 1476, 1480, 1484, 1488, 1492, 1496, 1499, 1504, 1510, 1513, 1535, 1539, 1542, 1547, 1551, 1666, 1673, 1679, 1685, 1691, 1697, 1703, 1709, 1715, 1720, 1725, 1730, 1770, 1775, 1780, 1785, 1790, 1795, 1800, 1805, 1810, 1815, 1820, 1825, 1829, 1833, 1837, 1841).)

power and coordination in legs, no recent evidence of atrophy (i.e. the last examination citing atrophy was in early 2013), adequate strength in the right arm, and normal power in the left arm. (*Id.* at 20–21 (citing 1089, 1364-65. 1374, 1446-48, 2044-47).) Judge Shelton characterizes the reported decreased extremity strength as "generally [] only slightly decreased at 4/5, except for 3-/5 or 3/5 as to the right upper extremity upon some exams during the course of post-right triceps tendon repair surgery recovery in 2009," and the decreased reflex "was only a slight decrease at 1/2." (*Id.* at 21 (citing 1099, 1112, 1114, 1373).) Judge Shelton also notes that these medical records document only a one-time finding of "decreased right fifth finger and right lower extremity sensation and an abnormal gait." (*Id.* at 1099.)

Next, Judge Shelton reviewed the diagnostic imaging and testing in the record. (*Id.* at 22–23.) Charles received cervical spine x-rays in April 2010, May 2013, and October 2015, which showed spasms, and degenerative joint disease, but no fractures or dislocations. (*Id.* at 22 (citing 1370, 1556, 1600).) Cervical spine MRIs in May 2010 and October 2013 showed, among other things, bulges, disc protrusions, or herniations at levels from C3 to C-7 (*id.* at 22 (citing 1077, 1553–54)), but otherwise "failed to reveal any noted spinal cord compression, nerve root impingement, thecal sac compromise, fracture, or dislocation." (*id.* (citing 1077, 1383–94)).

As for Charles's lumbar spine, he underwent x-rays in April 2010, November 2010, June 2013, and October 2015, which showed spasms and degenerative joint disease or osteoarthritis, but no fractures or dislocations. (*Id.* (citing 1354, 1370, 1559, 1600).) Lumbar spine MRIs in April 2010, September 2013, and May 2017 revealed disc herniations at L4-5 and bulges at L5-S1, but otherwise failed to reveal "any noted nerve root impingement, fracture, or dislocation." (*Id.* at 22 (citing 1078, 1557–58, 1602).)

Regarding Charles's spinal impairments, Judge Shelton reviewed several MRIs and

electromyography and nerve conduction studies of radiculopathy ("EMGs") that evidenced C5-C6 and C6-C7 radiculopathy and L4-L5 and L5-S1 radiculopathy. (*Id.* at 1356, 1360, 1561, 1565, 1605, 1609.) Judge Shelton notes that these EMGS did not document "brachial plexopathy or myopathy." (*Id.* (citing 1355–1362, 1379–1406, 1560–68, 1605–14).)

Judge Shelton reviewed Charles's subjective claims of pain and symptoms. Charles alleges that he is unable to work because of the injuries he sustained to his back, right arm, and left arm while working as a police officer. (*Id.* at 12.) Further, he testified that he could drive but only in short increments, he did not do any household chores, and he was "unable to perform a desk job at the police department due to an inability to sit for long periods of time." (*Id.* at 13.) A typical day for Charles consisted of seeing his children off to school, laying down to rest, and watching television, but his medicine made him fall asleep several times during the day. (*Id.*) His neck and back pain inhibited him from lifting anything more than ten to fifteen pounds with both arms, and his shoulder injuries made it difficult to reach overhead or in front of him. (*Id*) Further, he testified that he was unable to bend down. Charles claimed that he could walk for one or two blocks, stand for fifteen to twenty minutes, and sit for thirty minutes at a time. (*Id.*)

Judge Shelton found that the extent of Charles's claimed symptoms were inconsistent with the concurrent record evidence or were otherwise addressed through her RFC determination. (*Id.* at 23.) While Charles self-reported having the symptoms above, he also testified to driving his children, grocery shopping, managing his finances, "not requiring reminders to take care of personal needs or go places," and preparing simple meals, and attending his own doctor's appointments. (*Id.* at 23.) Treatment records did not state that Charles required assistance getting on and off the exam table, he removed his socks and shoes independently, and "was able to squat, walk on his toes, and walk on his heels." (*Id.* at 20 (citing 2043–2049).)

Regarding the opinion evidence in the record, Judge Shelton reviewed the medical opinions from Charles's treating and non-treating physicians. She gave no weight to the state agency medical consultants, Drs. Leong and Rizwan, who found Charles had no severe physical impairments, because these medical consultants did not have the opportunity to review the evidence presented at Charles's hearing, and because a finding of no severe impairments is contrary to the record. (*Id.* (citing 169–77, 180–86).) As to Drs. Chitoor Govindaraj and Dyana Aldea, two consultative examiners, who found Charles "cleared for occupation with no restriction," (*id.* (citing 1363–67, 2043–49)), Judge Shelton found these two opinions inconsistent with objective medical evidence in the record of Charles's shoulder tears, and thus accorded these opinions "limited weight." (*Id.*)

Following Charles's right triceps surgery in 2009, Dr. Ruggiero, Charles's surgeon and a treating physician, recommended to the New York City Police Department Medical Board that Charles receive disability retirement benefits because he would unable to return to normal police activities. (*Id.* at 1039.)[8] Drs. Nicholas DePalma, Stephen Borkow, and Marjorie Scheiber, were the members of the New York City Police Department Medical Board that reviewed Dr. Ruggiero's recommendation and Charles's application for Accident Disability Retirement. (*Id.* at 1129–33.) Drs. DePalma, Borkow, and Scheiber agreed with Dr. Ruggiero's assessment and found Charles was precluded from performing his full duties as a New York city police officer. (*Id.*) Judge Shelton considered these medical opinions, finding the notion that Charles had work-related limitations on account of his right triceps injury to be consistent with the record; however, "these

---

[8] The court notes that Charles's right tendon triceps injury and surgery occurred in 2009, prior to the alleged onset date., However, Charles continued to suffer from pain and issues related to this injury during the relevant period. (*Id.* at 18.)

opinions [were] vague, conclusory, not a specific function-by function assessment," and came to a conclusion of disability which is a "matter reserved to the Commissioner." (*Id.* at 27.) For these reasons, Judge Shelton accorded the opinions of Drs. DePalma, Borkow, Scheiber, and Ruggiero limited weight.

Finally, of particular relevance to this appeal, the ALJ evaluated the opinions of Drs. Napolitano, John Kwock, Daniel Wilen, and Mark Parnes. (*Id.* at 25, 28–29.) Dr. Napolitano conducted a single physical exam and opined that Charles could do light work, but limited to "occasional overhead reaching, frequent reaching in other directions, frequent handling and fingering, and no unprotected heights or mechanical parts." (*Id.* at 27 (citing 1446–48).) Judge Shelton found Dr. Napolitano's identified limitations as generally consistent with record evidence of Charles's left and right shoulder tears (evidenced by the 2011 and 2017 MRIs showing said tears), exam findings of decreased upper extremity sensation, and positive Spurling testing.[9] However, Judge Shelton found Dr. Napolitano's designation of light work inconsistent with the record, as evidenced by these same abnormal findings. (*Id.*) As such, Judge Shelton accorded Dr. Napolitano's opinion only partial weight. (*Id.*)

Dr. Kwock was an impartial medical expert who testified at Charles's ALJ hearing on December 16, 2020. Judge Shelton accorded his opinion partial weight. (*Id.* at 25.) While Dr. Kwock testified that Charles "could perform work at the light exertional level, with frequent push[ing]/pull[ing]; occasional overhead reaching;" frequent use of his feet, frequent climbing except only occasionally climbing ladders, balancing, kneeling; "occasional stooping, crouch, and

---

[9] (*Id.* (citing 1099, 1648, 1654, 1660, 1666, 1673, 1679, 1685, 1691, 1697, 1703, 1709) or straight leg raises (*id.* at 1409, 1416, 1420, 1460, 1468, 1472, 1476, 1480, 1484, 1488, 1492, 1496, 1499, 1504, 1510, 1513, 1535, 1539, 1542, 1547, 1551, 1666, 1673, 1679, 1685, 1691, 1697, 1703, 1709, 1715, 1720, 1725, 1730, 1770, 1775, 1780, 1785, 1790, 1795, 1800, 1805, 1810, 1815, 1820, 1825, 1829, 1833, 1837, 1841).)

crawling; and occasional working at unprotected heights and in proximity to heaving or moving machinery," Judge Shelton found Dr. Kwock's opinion regarding Charles's foot use limitation and ability to do light work inconsistent with the record. (*Id.*) As to the "exertional, postural, reaching, and hazard exposure limitations" of Dr. Kwock's opinion, Judge Shelton found these "generally consistent with the record." (*Id.*)

Dr. Wilen was Charles's treating physician from 2010-2017. (*Id.* at 20-21 (citing 1379-1406, 1405-1444, 1457- 1560, 1615-1843)).) Judge Shelton summarized Dr. Wilen's opinions, noting that in September 2011 and May 2014, he opined that Charles could stand or walk for less than two hours and sit for less than four hours, and he could lift and/or carry ten pounds occasionally and five pounds frequently. (*Id.* at 28 (citing 1406-07, 1457-58).) Further Dr. Wilen found that Charles would be out sick on average of two days or more per month, would require frequent breaks during the workday, takes medicine that would interfere with his ability to concentrate in a work setting, and "would be "unable to complete eight hours of work due to pain." (*Id.*) As such, in his "Social Security Disability Report[s]," Dr. Wilen found Charles "totally disabled." (*Id.* (citing 1404–05; 1408–10; 1459–61).) Judge Shelton found Dr. Wilen's opinions as to Charles's exertional limitations generally consistent with the overall record. (*Id.* at 28.) Dr. Wilen's limitation to carrying less than ten pounds was consistent with Charles's history of right triceps repair, and his MRIs showing tears in both shoulders. (*Id.*) Further, Dr. Wilen's limitation to sedentary work is consistent with Charles's MRI findings of degenerative spinal disorders. (*Id.* at 28 (citing 1370, 1556, 1600).)

However, Judge Shelton found the extent of Dr. Wilen's limitations inconsistent with the record. (*Id.*) While the record notes Charles experienced tiredness and fatigue as a side effect of his medication, the record does not document any deficits in terms of "alertness, orientation or

motor function upon exam." (*Id.*) As such, Dr. Wilen's finding that Charles would be unable to concentrate at work on account of his medication is not consistent with the Record. (*Id.*) Further, while the Record documents L4 nerve root abutment, it fails to reveal "a specific spinal diagnostic imaging finding of nerve root impingement." (*Id.* (citing 2602).) Lastly, Dr. Wilen claims Charles can stand or walk for two hours and sit for four hours, but his treatment notes do not state that Charles is unable to "stand/walk for [two] hours or sit for at least six hours." (*Id.* at 29.) As to Dr. Wilen's belief that Charles was totally disabled, Judge Shelton found such a statement "vague, conclusory, not a specific function-by-function assessment," and a matter reserved for the ALJ to determine. (*Id.*) For these reasons, Judge Shelton accorded Dr. Wilen's opinions less weight.

Regarding Dr. Parnes, Judge Shelton noted that Dr. Parnes completed a medical source opinion form on July 5, 2018, after the date last insured. (*Id.* at 28 (citing 1844–45).)[10] Dr. Parnes opined that Charles was totally disabled as he could only stand or walk for less than two hours and sit for less than four hours of an eight-hour workday, and lift and/or carry ten pounds occasionally and five pounds frequently. (*Id.* (citing 1381–82; 1406–07; 1457–58).) Judge Shelton found the exertional limitations in this opinion generally consistent with the Record, but the extent to which Dr. Parnes limited Charles inconsistent with the evidence as a whole. (*Id.* at 29.) Judge Shelton noted Charles's reported decrease in reflex and extremity strength was only slight (i.e. reflex was 1/2 and strength was 4/5). (*Id.* (citing 1862, 1864–66, 1869–81).) Dr. Parnes did not document Charles using an ambulatory assistive device, "contracture, cogwheeling, foot drop, wrist, drop, or pain behaviors upon exam, such as, [] shifting in a chair while seated [or] having to stand/walk after sitting for a short period…." (*Id.* (citing 923–1615; 1646–1833; 1862–81, 2042–49.) Lastly,

---

[10] Judge Shelton noted that Dr. Parnes's opinion states that he treated Charles since 2010, but the treatment records provided by Dr. Parnes first document him treating Charles in March 2017. (*Id.* (citing 1843–83.)

Dr. Parnes's limitation that Charles can only carry up to ten pounds infrequently is contradicted by Charles's own testimony that he can lift up to fifteen pounds using both hands. (*Id.* at 29.) Given these inconsistencies, Judge Shelton accorded Dr. Parnes's opinions less weight.

## II.    LEGAL STANDARD

### A.    STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are supported by "substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The Court must "review the record as a whole to

determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

B.    **ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS**

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy."

*McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.,* 931 F.3d 198, 201 (3d Cir. 2019).

III.    **DISCUSSION**

Charles contends that Judge Shelton erred in crafting his RFC because it is not supported by substantial evidence. (ECF Nos. 18 at 27–38; 26 at 1–9.) Charles presents three central

arguments in support of this claim. *First,* Judge Shelton improperly weighed Dr. Wilen's opinions and inadequately discussed Dr. Wilen's specialty as an orthopedic surgeon, his extensive treatment relationship with Charles, and the objective medical evidence supporting his opinions. *Second,* Judge Shelton failed to explain why she rejected Dr. Kwock's limitation of Charles to occasional lateral reaching, and instead, found Dr. Napolitano's limitation of Charles to frequent lateral reaching as consistent with the record. *Third,* Judge Shelton improperly rejected medical opinion evidence in the record and inserted her own lay opinion when determining Charles could perform sedentary work.

In a comprehensive twenty-three-page, single-spaced decision, Judge Shelton reviewed the evidentiary record to determine Charles's RFC. (AR at 8–32.) While Judge Shelton afforded little weight to the opinions of physicians deciding Plaintiff had no limitations whatsoever, she also discredited others who opined that Plaintiff was totally disabled such that he was precluded from performing sedentary work. (*Id.* at 25–29.) Instead, based on the record, Judge Shelton determined that Plaintiff retained the ability to perform sedentary work (the least exertionally demanding type of work), except he can never climb ladders, ropes, scaffolds, be exposed to unprotected heights or hazardous machinery, he can occasionally climb ramps, stairs, stoop, kneel, crouch, crawl, reach overhead, and he can frequently balance, reach in other directions, handle, and finger. Additionally, Charles is limited to "simple routine tasks in a routine environment with few changes, simple work decisions," and can work for two hours before needing a standard fifteen-minute break. (*Id.* at 17–30.) Judge Shelton formulated this RFC based on a review of the competing medical opinion evidence, Charles's treatment records, objective medical diagnostic tests, and Charles's own testimony and statements as to his pain. (*Id.* at 9–32.) As discussed below, the Court finds substantial evidence supports Judge Shelton's RFC determination. For the

following reasons, Charles's challenges to his RFC determination are unavailing.

### A.    DR. WILEN'S OPINION

Charles argues that Judge Shelton erred in discounting Dr. Wilen's opinions, which stated that Charles was incapable of performing sedentary work and was totally disabled. (ECF Nos. 18 at 27–35, 26 at 1–6.) Specifically, Charles contends that Judge Shelton violated 20 C.F.R. § 404.1527(c)(2) by improperly evaluating Dr. Wilen's medical specialization, the nature and extent of Dr. Wilen's treating relationship with Charles, and mischaracterizing objective medical evidence in the record that supports Dr. Wilen's opinions. Charles maintains that had Judge Shelton adequately considered these factors, she necessarily would have found Dr. Wilen's opinions merited "controlling weight." (ECF No. 26 at 1.) However, the Court finds Judge Shelton did not violate the regulations in her analysis of Dr. Wilen's opinions and substantial evidence supports Judge Shelton assigning less weight to said opinions.

For disability applications filed on or prior to March 17, 2017, such as this one, the ALJ's consideration of medical opinion evidence is governed by regulations at 20 C.F.R. §§ 404.1527, 416.927. An ALJ will "weigh" medical opinions when evaluating the RFC but is never bound by such opinions. *See* 20 C.FR. § 404.1527(d)(2) (the "final responsibility for deciding [the RFC] is reserved to the Commissioner.") These Regulations further explain that treating-source medical opinions can be afforded "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see also Plummer*, 186 F.3d at 429. When a treating-source's opinion is not assigned controlling weight, the ALJ is directed to consider factors such as the treating physician's specialty, the opinion's consistency with the record, the support and explanation provided by the source, the nature and extent of the treatment relationship, and

any other relevant factors. *See* 20 C.F.R. § 404.1527(c)(2)–(6). The ALJ must adequately articulate her "supporting explanations" for affording a treating physician's opinion less weight. *Brownawell v. Comm'r of Soc. Sec.,* 554 F.3d 352, 355 (3d Cir. 2008) (citing *Plummer,* 186 F.3d 422, 429 (3d Cir. 1999)).

When an ALJ evaluates a medical opinion, the ALJ is not required "to use particular language or adhere to a particular format in conducting [her] analysis." *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 119–20 (3d Cir. 2000)). Instead, the Court must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* This requirement governs the Court's review of each Step of the ALJ's analysis, including her RFC determination. An ALJ's finding of a claimant's RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Fargnoli,* 247 F.3d at 41 (quoting *Cotter,* 642 F.2d at 704 (the Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.")); *see also Burnett,* 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence." (citing *Plummer,* 186 F.3d at 429)).

The Court "examine[s] the ALJ's conclusions as to a claimant's RFC with 'the deference required of the substantial evidence standard of review.'" *Martin v. Comm'r of Soc. Sec.,* 547 F. App'x 153, 160 (3d Cir. 2013) (quoting *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002)). Substantial evidence does not require highly detailed explanations, "[t]o the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Garland v. Ming Dai,* 593 U.S. 357, 369 (2021) (citation omitted); *see*

*also Cotter*, 650 F.2d at 482 (T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.")

As an initial matter, the Court finds substantial evidence supports Judge Shelton's determination that Dr. Wilen's opinions should be afforded limited weight rather than controlling weight. The ALJ's analysis of Dr. Wilen's opinions is as follows:

> Treating provider, Dr. Daniel Wilen, M.D. issued several opinions. Specifically, on September 1, 2011 and May 13, 2014, Dr. Wilen completed opinion forms in which he opined that the claimant could stand/walk for less than two hours, sit for less than four hours, and lift and/or carry more than five pounds and less than ten pounds occasionally and less than five pounds frequently([AR at 1381-82, 1457-58]). Further, he also opined in these forms that the claimant would be out sick an average of two or more days per month, required frequent breaks/rest during the workday, was unable to complete eight hours of work due to pain, requires medications that interfere with his ability to function in a work setting, would have difficulty concentrating on his work, and is "disabled" (Id.). Moreover, in "Social Security Disability Report[s]" dated September 18, 2011 and May 16, 2014, Dr. Wilen reiterated his contemporaneous objective findings, and concluded that the claimant was "totally disabled" ([*Id.* at 1404-05, 1408-09, 1459-61]).

> Dr. Wilen issued his opinions while treating the claimant, presumably meaning that objective findings and subjective allegations from contemporaneous exams were the support for his opinions. Further, the existence of exertional limitations is generally consistent with the overall evidence of record. This includes, for example, a history of right triceps repair ([*id.* at 936-37]), shoulder MRI findings of tearing in the left shoulder in 2011 and the right shoulder in 2017([*id.* at 1368, 1614]), and spinal MRI findings consistent with degenerative changes in 2010, 2013 and 2017, as detailed at length above ([*id.,* at 1077-78, 1553-54, 1557-58, 1602]). However, the extent of limitation Dr. Wilen suggests is inconsistent with the record. For example, the record documents a remote history of right triceps surgery in 2009([*id.* at 936-37]), without any noted spinal surgery or any other extremity surgery in the relevant period ([*id.* at 923-1615, 1646-1843, 1862-81, 2043-49]). Further, despite obesity, symptoms, and alleged medication side effects, as noted above, the record failed to reveal, within the relevant period, deficits in terms of alertness, orientation or motor function upon exam, ambulatory assistive device use upon exam, or a repeated pattern of emergency room presentations([*id.*]). Moreover, while the record documents L4 nerve root abutment ([*id.* at 1601-02]), the record fails to reveal, in the relevant period, a specific spinal diagnostic imaging finding of nerve root impingement (id.). In addition, the opinions that he is "totally disabled" are vague, conclusory,

> not a specific function-by-function assessment, and on a matter reserved to the Commissioner.
>
> Therefore, in light of the above, the undersigned accords only less weight to Dr. Wilen's opinions.

(AR at 28.) Where the deferential substantial evidence standard means an "ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice," Judge Shelton's explanation above for finding the extent of limitations articulated by Dr. Wilen inconsistent with the record more than satisfies this standard. *Cotter*, 650 F.2d at 482; *Martin*, 547 F. App'x at 160 (quoting *Burns*, 312 F.3d at 129).

While Judge Shelton found support in the record for the existence of exertional imitations outlined in Dr. Wilen's opinions, (AR at 28 (citing 1368, 1614)), Judge Shelton explained that "the extent of limitation Dr. Wilen suggests," "is inconsistent with the record." (*Id.* at 28.) To support this determination, Judge Shelton noted that after Charles's right triceps surgery in 2009, subsequent exams revealed "good" ranges of right elbow motion, decreased pain, and increased strength after starting a strengthening process. (*Id.* at 20, 28 (citing 1063–65).) Judge Shelton noted that Charles required no other spinal or extremity surgery during the relevant period. (*Id.* (citing 923–1615, 1646–1843, 1862–81, 2043–49).) Further, despite Charles's obesity and symptoms of drowsiness and lethargy, the record did not reveal that Charles suffered any deficiency "in terms of alertness, orientation or motor function upon exam." (*Id.*) There is no evidence in the record documenting use of an ambulatory device, and the record indicates Charles made only one emergency room visit during the relevant period, in which Charles was discharged the same day for back pain. (*Id.*) Lastly, while the record documents L4 nerve root abutment, there is no evidence showing "a specific spinal diagnostic imaging finding of nerve root impingement." (*Id.* (citing

1601–02).) Based on all these reasons, Judge Shelton found the extent of limitations articulated by Dr. Wilen, precluding Charles from performing any work, as inconsistent with the Record, thus prompting her to afford his opinions less weight.

Further, in a factually analogous case, the District Court in *Kimberly D. v. Comm'r of Soc. Sec.* found the ALJ's terse rationale for affording a treating physician's opinion less weight – which consisted of a single sentence stating that the opinion "was inconsistent with objective medical evidence, conclusory, and contrary to the doctor's own evaluations," – as sufficient when considered in light of the entire ALJ opinion that included a detailed "review of [p]laintiff's medical history." *Kimberly D. v. Comm'r of Soc. Sec.,* No. 21-8718, 2022 WL 3926073, at *6 (D.N.J. Aug. 31, 2022) It is evident that Judge Shelton's rational for affording less weight to Dr. Wilen's opinion is for more substantive and extensive than the ALJ's opinion that was affirmed in *Kimberly D. v. Comm'r of Soc. Sec. (Id.)*

While Charles claims there is no evidence in the record that contradicts Dr. Wilen's opinions that Charles is incapable of performing sedentary work, he fails to account for the six opinions in the record that found Charles capable of performing light work. (AR at 17.) The Court notes that the sedentary level of exertion requires "periods of standing or walking" that generally "total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday," as compared to light work which "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour work day." SSR 83-10, 1983 WL 31251 at *5. Judge Shelton actually found Plaintiff more limited exertionally than half of the opining doctors in the record by limiting Plaintiff to sedentary work. (*Id.*); *see Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit."). Thus, a full reading of the

written decision lends credence to her findings regarding Dr. Wilen's opinion. *Sejeck v. Berryhill*, No. 18-16734, 2019 WL 7207506, at *7 (D.N.J. Dec. 27, 2019) ("[W]hile an ALJ must consider the opinions of treating physicians, [t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ where it is not well supported or there is contradictory evidence." (alteration in original) (internal quotation marks and citation omitted)).[11]

In addition, Judge Shelton reviewed in detail the orthopedic medical records from Healthcare Associates in America, that formed the bases for Dr. Wilen's opinions. She noted the existence of abnormal findings (i.e. positive Spurling tests, decreased ranges of movement in the spine and upper extremities, and decreased extremity strength), but found that these reports of decreased extremity strength were slight, and such records document only a "one-time exam finding" of an abnormal gait, and decreased sensation in the right finger and arm. (AR at 21.) This detailed review of Dr. Wilen's treatment notes undergirded her evaluation of Dr. Wilen's opinions, thereby satisfying the Court that the ALJ did not "reject [Dr. Wilen's] evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Rather, substantial evidence supports Judge Shelton's decision to give less weight to Dr. Wilen's medical assessment. *See id.* (citing *Stewart v. Sec'y of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)).

Equally unavailing is Charles's contention that the ALJ failed to adequately consider Dr. Wilen's specialty, extensive treatment relationship, and objective medical evidence supporting

---

[11] Charles also argues that Judge Shelton ignores the fact that Dr. Wilen's opinion is consistent with Dr. Parnes's opinion as evidence that she erred in her RFC determination. (ECF No. 18 at 37.) However, Judge Shelton explained why she gave less weight to both Drs. Wilen and Parnes's opinions. (AR at 28–29.) Simply because Charles can point to one opinion that is consistent with Dr. Wilen's, does not evidence error on Judge Shelton's part, and the Court notes that half the opinions in the record contradict Dr. Wilen's opinions. (*Id.* at 25–27.)

such opinions, as required under Section 404.1527(c)(2). As a preliminary matter, "[a]n ALJ need not explicitly discuss each factor [under 20 C.F.R. § 404.1527] in [her] decision." *O'Neill v. Comm'r of Soc. Sec.*, No. 18-0698, 2019 WL 413539, at *6 (D.N.J. Jan. 31, 2019); *Samah v. Comm'r of Soc. Sec.*, No. 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) (same) (collecting cases). "Instead, an ALJ need only 'explain his evaluation of the medical evidence for the district court to meaningfully review whether his [or her] reasoning accords with the regulation's standards.'" *Samah*, 2018 WL 6178862, at *5 (quoting *Laverde v. Colvin*, No. 14-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)); *see also Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) ("Although the ALJ did not specifically identify each factor [under 20 C.F.R. § 404.1527(c)], all relevant factors were considered throughout the lengthy, detailed opinion.") (citations omitted). Judge Shelton did just that in this case.

Although Judge Shelton did not explicitly refer to Dr. Wilen as a "board certified orthopedic surgeon," she specifically considered Dr. Wilen's "orthopedic medical records" from March 2009 to November 2017. (AR at 20–21.) As such, the ALJ opinion sufficiently indicates that Judge Shelton was aware of Dr. Wilen's orthopedic specialty when she considered his treatment records in evaluating his opinions. *See Moore v. Comm'r of Soc. Sec.*, No. 20-1550, 2021 WL 5604988, at *3 n. 6 (W.D. Pa. Nov. 30, 2021) (despite ALJ not explicitly referencing each factor of section 404.1527, "it is clear from the decision, read as a whole, that the ALJ considered Plaintiff's treating history with Dr. Sharma including its length, Dr. Sharma's specialty, and the degree to which other evidence in the record supported Dr. Sharma's opinion. And while explicit mention of the relevant factors might have aided this Court's review, ALJs are not required to use any 'particular language' or 'format' where their decisions demonstrate consideration of the 'appropriate factors' and permit 'meaningful review.'") (quoting *Jones*, 364 F.3d at 504–05).

Next, Charles argues that Judge Shelton should have articulated in greater detail the length and nature of Dr. Wilen's treatment relationship with him. (ECF No. 18 at 31–32.) However, Judge Shelton specifically acknowledged that Dr. Wilen was a "treating provider." (AR at 28.) She further explained that "Dr. Wilen issued his opinions while treating Plaintiff, presumably meaning that objective findings and subjective allegations from contemporaneous exams were the support for his opinions" and extensively reviewed Dr. Wilen's treatment records. (*Id.* at 20–21 (citing 923–1615, 1646–1843, 1862–81, 2043–49).) While Charles argues that Judge Shelton failed to mention various diagnostic tests that Dr. Wilen ordered for Charles in her evaluation of Dr. Wilen's opinions, Judge Shelton discussed these diagnostic tests in her review of the medical record evidence. (*Id.* at 22–23 (citing 1368, 1553–55, 1557–58, 1560–65).) Judge Shelton also cited to Dr. Wilen's orthopedic treatment notes, which included the length of time Dr. Wilen treated Charles, when explaining that his exertional limitations for Charles were not supported by these treatment notes. (*Id.* at 29 (citing 923–1615, 1646–1843, 1862–81, 2043–49).)

This explanation demonstrates that Judge Shelton sufficiently considered the "appropriate factors" (i.e. the nature of Dr. Wilen's treatment relationship) to permit "meaningful review" by this Court. *Jones,* 364 F.3d at 504–05. A more specific or explicit discussion of these factors is not required by the regulations. *See Diaz v. Comm'r of Soc. Sec.*, 577 F. 3d 500, 504 (3d Cir. 2009) (stating that an ALJ "need not employ particular 'magic' words" or "adhere to a particular format" rather, the decision need only contain a sufficient discussion of the evidence and explanation of the ALJ's reasoning to enable "meaningful judicial review"); *see also Gary-Maryon v. Colvin*, No. 14-1318, 2015 WL 2090226, at *2 (W.D. Pa. May 5, 2015) ("The ALJ . . . recited and considered Plaintiff's treatment history, thus implicitly considering the nature and extent of the treating

relationship."). Accordingly, the ALJ opinion sufficiently discusses Dr. Wilen's treatment relationship with Charles.

Finally, Charles maintains that Judge Shelton mischaracterized the objective medical findings of "muscle spasm, muscle weakness, and decreased range of motion" in Dr. Wilen's treatment notes as subjective evidence. (ECF Nos. 18 at 34; 26 at 1–2.) In doing so, Judge Shelton diminished the supportability of Dr. Wilen's opinions, as supportability is measured by the degree to which an opinion is grounded in objective medical evidence. (*Id.* at 35.) In her opinion, Judge Shelton wrote that Dr. Wilen's treatment notes "generally document exam findings of *subjective* spinal, trapezius, buttock, upper extremity, or lower extremity tenderness *with* spinal spasm or spinal weakness, decreased ranges of spinal, right elbow, right shoulder, or left shoulder motion, and decreased extremity strength." (AR at 20) (emphasis added). The Court finds Judge Shelton appropriately characterized the findings of tenderness as subjective, because "[p]resumably, [claimant's physician] would detect the tenderness, because plaintiff would report feeling pain upon palpation. As a result, the physical findings of tenderness ultimately depended upon plaintiff's subjective reports." *Antoniolo v. Colvin,* 208 F. Supp. 3d 487, 597 (D. Del 2016) (quotations omitted). Accordingly, Judge Shelton did not mischaracterize the objective evidence of muscle spasms, decreased extremity strength, and limited range of motion as subjective, but accurately considered the subjective evidence of pain and tenderness caused by these objective findings.

### B.    ALJ RELIANCE ON LAY OPINION

Charles next argues that Judge Shelton improperly relied on "her own lay re-interpretation of the evidence cobbled from non-physicians who have not reviewed the complete record." (ECF No. 18 at 35) (citing *Brownawell,* 554 F.3d). Charles points to the fact that Judge Shelton "cites no reliable medical opinion" in support of her RFC determination as evidence of this claim. (*Id.*)

Charles also attacks Judge Shelton's references to the absence of evidence in the Record as irrelevant when such absent evidence is unrelated to Charles' impairments. (*Id.* at 36; ECF No. 26 at 2–3.) Essentially, Charles claims that substantial evidence supports the limitations outlined by Charles's treating physicians (i.e. limitations that preclude even sedentary work) and asks this court to re-weigh the evidence in favor of that RFC determination. (*Id.* at 35–37.) The Court must decline this invitation for the following reasons.

First, an ALJ is not required to point to every medical fact in the record that directly supports its ultimate RFC determination. *See Chandler,* 667 F.3d at 362 (holding ALJ did not err when it extrapolated from the medical opinions in the record in crafting its own RFC determination as the ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision.") Additionally, "it is the ALJ—not treating or examining physicians or state agency physicians—who makes the ultimate disability and RFC determinations." *See Roger D. v. Kijakazi,* 20-1806, 2021 WL 4191434, at *5 (D.N.J. Sept. 15, 2021) (citing *Chandler,* 667 F.3d at 361); *Mays v. Barnhart,* 78 F. App'x 808, 813 (3d Cir. 2015) ("[T]he ALJ is responsible for making a [RFC] determination."). As previously stated, where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit," but cannot reject evidence for no reason or the wrong reason. *Morales,* 225 F.3d at 317. As discussed above in Section III.A, Judge Shelton's opinion—that reviewed over eight years of medical records, opinions from twelve different medical sources, Charles's hearing testimony and subjective complaints, and analysis explaining why Dr. Wilen's opinion was given its corresponding weight by citing to several pieces of record evidence—clearly

satisfies the substantial evidence standard. (AR at 9–32.); *see also Cotter*, 650 F.2d at 482; *Martin*, 547 F. App'x at 160 (*quoting Burns*, 312 F.3d at 129).

Further, Charles's claim that Judge Shelton could not cite to a single medical opinion to support her RFC determination ignores the fact that she discounted several opinions that found Charles could perform light work. (ECF No. 21 at 26; AR at 17.) The Court notes that sedentary work is a more limiting exertional category than light work. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.") For example, Dr. Kwock specifically testified that Charles could stand or walk for six hours or sit for six hours of an eight-hour workday. (*Id.* at 97.) While Judge Shelton rejected Dr. Kwock's opinion to the extent it found Charles capable of light work, said opinion still supports Judge Shelton's more limited designation of sedentary work. *See* SSR 83-10, 1983 WL 31251, at *5. Accordingly, despite Judge Shelton finding these opinions -- to the extent they found Charles capable of light work -- inconsistent with the Record, such opinions still lend support to her limitation of sedentary work. (AR at 25-27.)

Continuing to challenge Judge Shelton's RFC determination, Charles argues that she improperly relied on the absence of evidence and surgical interventions during the relevant period to support her RFC determination. However, Judge Sherton is permitted to point to the "absence of muscle fasciculations, pronator drift, dysmetria, dysdiadochokinesia, tibulation, nystagmus, contracture, cogwheeling, involuntary/tremors or deformity" as evidence that the extent of Charles's limitations were not as significant as Dr. Wilen described. (ECF Nos. 18 at 37; 26 at 2.); *see Lane v. Comm'r of Soc. Sec.,* 100 F. App'x 90, 95 (3d Cir. 2004) (noting that the ALJ is

"entitled to rely not only on what the record says, but also on what it does not say.") (citation omitted.)[12] As such, Judge Shelton appropriately considered that the record did not contain positive findings that indicate the existence of musculoskeletal or neurological impairments.

### C.    DR. KWOCK'S OPINION

Lastly, Charles argues that the ALJ erred in its evaluation of Dr. Kwock's opinion testimony. Charles claims that Judge Shelton improperly ignored Dr. Kwock's statement that Charles is limited to occasional lateral reaching. (ECF No. 18 at 37.)

As previously noted, it is the ALJ—not a testifying medical expert—who makes the ultimate RFC determination. *See Chandler,* 667 F.3d at 361. Even when an ALJ gives a medical opinion significant weight, there is no requirement that the ALJ adopt every limitation articulated by that source opinion in the RFC assessment. *See Wilkinson v. Comm'r of Soc. Sec.,* 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight.") Accordingly, the fact that Judge Shelton gave "partial weight" to Dr. Kwock's opinion does not require

---

[12] Charles claims that the absence in the record of "fasciculations, pronator drift, dysmetria, dysdiadochokinesia, titubation, nystagmus, contracture, cogwheeling, involuntary moments/tremors" severe only to show whether someone has Parkinson's Disease, and thus, should have no significance on Judge Shelton's determination because Charles does not claim to have Parkinson's Disease. (ECF No. 26 at 3.) However, these medical findings can be an indication of Parkinson's Disease as well as musculoskeletal or neurological impairments of the kind Charles exhibits. (AR at 22, 28.) Further, Charles claims that his lack of surgery during the relevant period cannot be used as a "proxy for a finding of non-disability." (ECF No. 26 at 3.) Judge Shelton references the absence of surgery as one of several factors that contributed to how she weighed Dr. Wilen's opinions and Charles's RFC determination, and may consider a lack of surgery as part of her calculus when characterizing Charles's treatment plan as conservative. *See Roger D.,* 2021 WL 4191434 at * 10 ("courts in this circuit have characterized medication management and injections as conservative treatment)(citing *Sudler v. Comm'r of Soc. Sec.,* 827 F. App'x 241, 245–46 (3d Cir. 2020) (characterizing injections as "relatively routine and conservative treatment"); *Jimenez v. Colvin,* No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy"); *Herman v. Colvin,* No. 12-6640, 2013 WL 6909915, at *8 (D.N.J. Dec. 31, 2013) ("The ALJ also emphasized the conservative methods by which Plaintiff was treated. The record evidences treatment of pain medications, injections, and chiropractic treatment.").

her to adopt every exertional limitation outlined in his opinion into her RFC determination. (AR at 25.); *see also Wilkinson,* 558 F. App'x at 256 (permitting the ALJ to rely "on multiple sources in reaching her conclusion" as to a claimant's RFC) Judge Shelton adequately considered Dr. Kwock's opinion and explained why she felt it merited "partial weight." (AR at 25.) In reference to the exertional limitations in Dr. Kwock's opinion, Judge Shelton found them generally consistent with the record but gave no indication that she adopted Dr. Kwok's exertional limitations wholesale. (*Id.* at 26.)

   While Judge Shelton did not explicitly discuss the portion of Dr. Kwok's testimony that limited Charles to occasional lateral reaching on account of his right elbow injury, she did not "simply ignore" this limitation. (AR at 25–27.) Judge Shelton provided ample explanation for why she limited Charles to frequent lateral reaching in her discussion of Dr. Napolitano's opinion. (*Id.* at 27.) The Court reviews an ALJ opinion as a whole. *See Jones,* 364 F.3d at 503 (an ALJ's decision should be "read as a whole") Judge Shelton explained that Dr. Napolitano's limitation to "occasional overhead reaching, frequent lateral reaching in other directions, frequent handling, and fingering . . ." was consistent with the record because it accounted for the fact that Charles's suffered from some upper extremity issues (i.e. right and left shoulder tears, decreased upper extremity sensation, and positive Spurling tests,), but otherwise showed a "broad range of normal findings." (*Id.* (citing 1444–46).)

   This explanation sufficiently enables the Court to determine why Judge Shelton found Charles limited to "frequent reaching in other directions," which is all that is required to satisfy the deferential substantial evidence standard. *See Burnett*, 220 F.3d at 121; *see also Cotter,* 650 F.2d at 482 (stating that an ALJ must provide "some explanation" for "probative evidence which would have suggested a contrary disposition," and "a sentence or short paragraph would probably suffice") Although Charles points to Dr. Kwock's opinion—limiting Charles to occasional lateral reaching—as contrary evidence, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the

opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.,* 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler,* 807 F.2d 54, 58 (3d Cir. 1986)).[13] Charles further questions the medical bases of Dr. Napolitano's opinion. (ECF No. 26 at 8.) However, as previously noted, it is Judge Shelton—not a treating or examining physician or a medical expert—who makes the ultimate RFC determinations. *See Chandler,* 667 F.3d at 361. Moreover, as explained above, Judge Shelton cited to medical evidence in the record to support her finding that Charles is limited to frequent lateral reaching. (AR at 27 (citing 1026, 1099, 1368, 1446, 1614, 1648, 1654, 1660, 1666, 1669, 1673, 1685, 1703, 1709).)[14]

---

[13] *See e.g. Roger D.,* 2021 WL 4191434, at *9 (citing *Johnson,* 497 F. App'x at 201 (citing *Simmonds,* 807 F.2d at 58); *see also Chandler,* 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.,* 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson,* 402 U.S. at 399 (alteration in original)); *Davison v. Comm'r of Soc. Sec.,* No. 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements."); *Lewis v. Comm'r of Soc. Sec.,* No. 15-6275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("Though the Plaintiff accuses the ALJ of cherry-picking evidence, it actually appears that the Plaintiff is the one guilty of cherry-picking since the bulk of the medical record seems to indicate minimal issues with executive function and mental capabilities."). The Court therefore declines Charles's invitation to impose his own factual determinations and re-weigh the evidence. *See Chandler,* 667 F.3d at 359; *Zirnsak,* 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder")

[14] Because the Court finds substantial evidence supports the ALJ's RFC determination, the Court need not address Charles's final argument that reversal for the award of benefits, not remand, is warranted in the instant matter. (ECF Nos. 18 at 39; 26 at 9.)

**CONCLUSION**

Having reviewed the record as a whole, the Court affirms the decisions of Judge Shelton and the Administration's Appeals Council. The Court will issue an order consistent with this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: October 24, 2024